IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| BILLY GOFF, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil No. 11-5114-CV-SW-NKL-SSA |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Plaintiff Billy Goff challenges the denial of his application for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, §§ 1381, *et seq.* [Doc. # 3]. Goff argues that the Administrative Law Judge ("ALJ") erred by incorrectly weighing the evidence and failing to provide a specific bridge between the evidence and the residual functional capacity ("RFC") determination. For the reasons set forth below, the Court affirms the decision of the ALJ.

**I.    Background**

    **A.    Medical History**

Goff has a history of lower back pain as well as pain and numbness in his left leg arising from a lumbar spine laminectomy that he underwent sometime in the 1980's. Between April 7 and June 13, 2005, Goff went to the Freeman Hospital Emergency Room ("the ER") five times for this pain. X-rays taken on April 7, 2005, showed some

1

posterior decompression in Goff's lower spine. A computerized tomography ("CT") scan conducted on April 13, 2005, showed postsurgical changes from the prior laminectomy in the same part of Goff's spine and bulging of all lumbar disks. A magnetic resonance imaging ("MRI") scan on April 18, 2005, also showed postsurgical changes, as well as foraminal encroachment with possible compromise to a nerve root and grade one retrolisthesis in part of Goff's lower spin. During these visits, doctors prescribed Goff various medications for the pain.

On June 13, 2005, Goff started a physical therapy program designed to help with the pain. During intake, Goff stated that he had experienced back pain off and on in the years after his back surgery, but that the pain had intensified about four months earlier. The physical therapist found that all of Goff's ranges of motion were limited due to pain. Goff attended twelve of fourteen physical therapy sessions, which were intended to develop a program Goff could follow on his own at home. Goff was discharged for noncompliance when he did not attend his final physical therapy session. On discharge, the physical therapist noted that Goff showed a decrease in symptoms with treatment, although this success was limited, possibly due to the severity of the pain.

Goff returned to the ER on August 28, 2006, complaining of lower back pain. An x-ray showed postsurgical changes in Goff's lower spine, but no specific acute radiographic abnormality. Goff went to the ER for lower back pain two more times in 2009. On May 20, Goff stated that the pain began the day before when he fell off of a tractor lawnmower. On June 3, Goff reported that the pain started a month earlier and

2

that it was aggravated three days prior to the visit when he moved an air conditioner out of a window.

On April 19, 2010, Goff returned to the ER for lower back pain. Goff stated that the pain had worsened from walking a lot. The pain was relieved but still present when he could remain still. Images taken that day showed degenerative narrowing in Goff's lower spine and a straightening of the lumbar lordosis suggesting paraspinal muscle spasms.

On May 5, 2010, Goff saw a doctor of osteopathic medicine, Ashley Ferraro, regarding his lower back pain. Goff told Dr. Ferraro that he felt well until two years ago, when his back pain began waxing and waning. He stated that the latest increase in pain was particularly bad and that the ER staff had told him to find a primary care physician to order an MRI. The ER had also given him Vicodin for the pain, which Goff did not like because it made it difficult for him to sleep. Goff was also taking muscle relaxers for his lower back spasms, but he denied drowsiness. Dr. Ferraro prescribed several medications and recommended that Goff have an MRI.

Goff saw Dr. Ferraro again on May 29, 2010, complaining that he had fallen several times recently and that he was suffering from dizziness and blurred vision. Dr. Ferraro decreased Goff's Neurotonin and asked him to consider decreasing his Darvocet and muscle relaxers, but Goff said that he needed these for the pain.

On June 4, 2010, Goff had an MRI scan, which showed mixed spondylitic disc protrusions, biforaminal protrusions, moderate bilateral neural foraminal stenosis, acquired central canal stenosis, and abutment of several nerve roots. On June 12, 2010,

Goff met with Dr. Ferraro to discuss the MRI results. He also reported that the Darvocett was not helping and complained of dizziness. Goff asked for new options. Dr. Ferraro prescribed Vicodin.

Goff returned to Dr. Ferraro for a follow-up visit on June 26, 2010. He denied drowsiness from the Vicodin and reported that it provided some relief from his back pain. But he also had an appointment with pain management and expressed hope that injections would be more helpful.

Dr. Ferraro referred Goff to Dr. Heather Stelling, M.D., at the Ozarks Community Hospital Chronic Pain Clinic for further treatment. On July 7, 2010, Goff met with Dr. Stelling. He reported that he had tried physical therapy, but that it did not help. He also indicated that a TENS unit, surgery, and certain injections did help with the pain. Based on the April 19, 2010 x-rays and the June 4, 2010 MRI, Dr. Stelling diagnosed Goff with lumbar spinal stenosis, lumbar radiculopathy, and lumbar spondylosis. Dr. Stelling examined Goff again on August 6, 2010, noting that he suffered from a lot of muscle spasms and could not sit and/or stand for more than fifteen minutes at a time or for more than two hours total per day.

On August 11, 2010, Dr. Stelling completed a Medical Source Statement – Physical ("MSSP"). Dr. Stelling reported that Goff could carry less than five pounds frequently and fifteen pounds occasionally. She indicated that Goff could stand and/or walk continuously for fifteen minutes and for two hours total throughout an eight hour day. She recommended the same limitations with respect to sitting. She also reported that Goff could never climb, stoop, crouch, or crawl, and only occasionally balance,

4

Case 3:11-cv-05114-NKL   Document 11   Filed 09/17/12   Page 4 of 15

kneel, or reach. Finally, Dr. Stelling indicated that Goff would need to lie down to relieve pain for thirty minutes every ninety minutes to two hours during the day.

On November 5, 2010, Goff saw Dr. Todd Harbach, M.D. Goff told Dr. Harbach that his pain was worse with bending, lifting, twisting, walking, or sleeping, and better with hydrocodone and a TENS unit. He also reported taking additional pain pills, but complained that the medications did not really work and he was still in miserable pain all of the time. Dr. Harbach reported that Goff walked very stiffly, with short, shuffling steps, and was very tender to palpitation on his lumbar spine. Dr. Harbach also noted that Goff had a negative straight-leg raise, had normal strength in both legs, and demonstrated normal coordination and stability.

Based on radiographic images, Dr. Harbach assessed post-operative changes in Goff's lumbar spine, advanced collapse in several disks, but overall normal lumbar lordosis and no sign of instability. Dr. Harbach reviewed the June 4, 2010 MRI and found that it showed worn out disks in parts of Goff's spine, but no significant neural compromise or other significant central or lateral recess stenosis or significant herniation. Dr. Harbach's impression was that Goff suffers from intractable back pain, multilevel degenerative disk disease, and facet syndrome. For further treatment, Dr. Harbach recommended that Goff see a pain clinic and possibly insert a spinal cord stimulator. After stating that Goff has enough leg pain that a simulator might be reasonable, Dr. Harbach stated that he could not really explain that pain level based on Goff's MRI. Dr. Harbach also indicated that Goff's EMG was unremarkable.

### B. Goff's Administrative Hearing Testimony

On October 25, 2010, Goff testified at a hearing before an ALJ regarding his disability claim. Goff stated that he last worked as a crane operator for a roofing company for two weeks in 2009, but was unable to perform the job. Prior to this, Goff worked seven or eight residential roofing jobs as an independent contractor, which usually took between three days and a week to complete. He testified that he had approximately two ER visits because of these jobs and that his last independent roofing job was in 2006.

Goff also testified about his daily life. He said he showers on his own but needs help getting dressed and is limited to sandals or slip on shoes. He has needed help getting dressed for approximately three years. Around the house, Goff helps feed a dog and rides with his girlfriend's uncle to his doctor's appointments. He drives short distances, either to the store or to pick up his girlfriend. For exercise, he tries to walk around the block once during the day and then down to the corner and back in the evening. Goff testified that he could only walk the length of one block before needing to stop and rest for ten to fifteen minutes. He stated that he can stand or sit for about two hours at a time and can lift ten to fifteen pounds, but he does not like to "push it." Goff likes to fish, and testified that he had been once in 2010 prior to the October 25 hearing. Goff testified that he takes hydrocodone and Valium for pain. He stated that the combination of diazepam and Valium makes him drowsy, which leads him to take three, two-hour naps during the day.

### C. The ALJ's Findings

The ALJ found that Goff has the following severe impairments: status post laminectomy syndrome, degenerative disc disease of the lumbar spine, headaches,

hypertension, radiculopathy of the left leg, and status post left knee surgery. The ALJ determined that Goff had the RFC to perform sedentary work, meaning that Goff can lift no more than ten pounds occasionally, walk and stand occasionally, and perform occasional postural maneuvers such as stooping, kneeling, crouching, crawling, and climbing ramps and stairs. The ALJ also limited Goff to simple, routine, repetitive tasks due to pain.

The RFC determination rested partly on the ALJ's finding that portions of Dr. Stelling's opinion were inconsistent with the medical evidence and Goff's daily activities. The ALJ gave Dr. Stelling's opinion "some weight," but declined to give it "controlling weight." For similar reasons, the ALJ found that Goff's testimony concerning the intensity, persistence, and limiting effects of his pain was not credible to the extent it was inconsistent with the RFC assessment.

Based on Goff's age, education, work experience, RFC, and the testimony of a vocational expert, the ALJ found that there were jobs existing in significant numbers in the national economy that Goff could perform. Consequently, the ALJ determined that Goff was not disabled.

## II.  Discussion

### A.  Standard of Review

The Court will affirm the Commissioner's decision denying benefits if it is supported by substantial evidence in the record as a whole. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence is 'less than a preponderance but is enough that a reasonable mind would find it adequate to support' the conclusion." *Id.*

(quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004)). The Court must consider the evidence that supports the decision as well as the evidence that opposes it. *Id.* An administrative decision will not be reversed, however, simply because the Court might have reached a different conclusion. If the evidence supports two inconsistent positions and one of those positions represents the Commissioner's findings, the Court must affirm the denial of benefits. *Id.*

### B. Weight of Dr. Stelling's Medical Opinion

Goff contends that the ALJ should have given controlling weight to the opinion of his treating physician, Dr. Stelling. The opinion of a treating physician "should not ordinarily be disregarded and is entitled to substantial weight." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). A treating source's medical opinion must be given controlling weight, meaning it must be adopted, if it is well-supported by medically acceptable diagnostic techniques and not inconsistent with the other substantial evidence in the record. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *see also Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005). Because the record must be evaluated as a whole, however, an ALJ may discount or even disregard the opinion of a treating physician when it is inconsistent with other evidence in the record. *Medhaug v. Astrue*, 578 F.3d 805, 815-16 (8th Cir. 2009). In any case, the ALJ must provide good reasons for the weight given to a treating source's opinion. 20 C.F.R. § 416.927(c)(2).

The ALJ gave some weight, but not controlling weight, to the opinion of Dr. Stelling. In particular, the ALJ did not accept Dr. Stelling's assessment that Goff would need to lie down or recline to alleviate pain every thirty minutes for at least ninety

8

minutes during an eight hour workday. The ALJ found this limitation to be inconsistent with the medical evidence and Goff's daily activities. [Tr. 14]. The ALJ also found that Dr. Spelling's opinion that Goff could never climb was inconsistent with the medical evidence. [Tr. 14]. Later in the decision, the ALJ summarized the medical evidence that was inconsistent with Goff's claim. The ALJ noted that Goff's EMG was unremarkable and that Dr. Harbach, an examining doctor, could not explain the level of Goff's pain based on the June 4, 2010 MRI. [Tr. 17]. In addition, the ALJ noted that Goff had negative straight leg raises and demonstrated normal coordination and stability during the physical examination by Dr. Harbach. [Tr. 17].

The Commissioner further cites Dr. Ferraro's statement on June 26, 2010, that Goff's condition had improved "remarkably" with new medication. But this comment referred specifically to Goff's blood pressure, not his back or leg pain. [Tr. 286, 292]. Consequently, the only inconsistent medical evidence appears to be the report of Dr. Harbach.

Goff misconstrues the ALJ's decision in arguing that Dr. Harbach's opinion was not inconsistent with Dr. Stelling's assessment. Goff notes that Dr. Harbach diagnosed him with intractable back pain and multilevel degenerative disk disease and recommended that Goff see a pain clinic physician to be evaluated for a spinal cord stimulator. [Tr. 365]. In addition, Goff cites Dr. Harbach's statement that Goff's worn out disks have "at best a 50% chance of getting better, probably worse than that." [Tr. 365]. These facts do show some consistency between the opinions of Dr. Harbach and Dr. Stelling. But the ALJ did not find that Dr. Harbach's report was entirely inconsistent

9

with Dr. Stelling's assessment. Rather, the ALJ did give weight to Dr. Stelling's opinion to the extent it was not undermined by Dr. Harbach's conclusions.  Goff fails to address, however, Dr. Harbach's finding that the objective medical evidence did not explain the severity of Goff's symptoms.  But it was this opinion in particular that caused the ALJ not to grant controlling weight to the conclusory findings contained in the MSSP signed by Dr. Stelling.

In addition, Dr. Stelling saw Goff on only two occasions prior to completing the MSSP, which detracts from the relative weight that should be assigned to her opinion. *See, e.g.*, *Casey v. Astrue*, 503 F.3d 687, 692 (8th Cir. 2007) ("In considering how much weight to give a treating physician's opinion, an ALJ must also consider the length of the treatment relationship and the frequency of examinations."); *Randolph v. Barnhart*, 386 F.3d 835, 840 (8th Cir. 2004) (affirming rejection of treating source's opinion where the treating physician had only examined the claimant on three occasions).  The limited extent of the treatment relationship thus provides additional support for the ALJ's decision not to give Dr. Stelling's opinion controlling weight.

Moreover, the ALJ also found that Goff's activities were inconsistent with the extreme limitations assessed by Dr. Stelling.  The ALJ cited Goff's testimony that, during the alleged period of disability, he performed seven or eight roofing jobs as an independent contractor, worked as a crane operator for approximately two weeks, drove a tractor lawnmower, and moved an air conditioner.  [Tr. 16].  Goff argues that his work attempts are not relevant to assessing his impairment because the ALJ found that any work Goff performed after the alleged disability onset date was an unsuccessful work

10

attempt. [Tr. 13]. But in cases where the medical evidence of the claimant's disability is inconsistent, work attempts may be relevant as circumstantial evidence that the claimant did not view his pain as disabling. *Bentley v. Shalala*, 52 F.3d 784, 786 (8th Cir. 1995).

In addition, the ALJ noted that Goff reported improvement in his pain with medication and the use of a TENS unit. [Tr. 16]. Finally, the ALJ found that Goff's regular activities were inconsistent with a claim of disabling back pain. These activities included walking one or more blocks at a time, [Tr. 17], driving a motor vehicle, performing housework such as making his bed, doing laundry, and washing dishes, leaving home to shop and eat, taking care of a pet dog, and fishing, [Tr. 16].

Goff contends that the statements he made about improvement in his pain with medication, when read in context, consistently demonstrate that using these medications was better than nothing at all, but he was nonetheless in miserable pain. In addition, Goff claims that the evidence of his activities does not conflict with Dr. Stelling's assessment because the ALJ overstated the intensity and frequency of these activities. Goff maintains that he engaged in these activities only rarely and in a very limited capacity. But these arguments only contest the relative weight the ALJ gave to different facts in the record. These facts still provide reasonable support for the ALJ's decision even if, as Goff contends, the ALJ could have interpreted them differently. Where it is possible, after review of the evidence, to reach two inconsistent positions and one of those positions is the Commissioner's, the Court must affirm. *Finch*, 547 F.3d at 935.

Consequently, the Court finds that the ALJ's decision to partially discount the opinion of Dr. Stelling based on the report of Dr. Harbach and the evidence of Goff's

11

activities did not fall outside the "available zone of choice," *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (quotation omitted). Although the ALJ might have reached a different conclusion, the decision not to grant Dr. Stelling's opinion controlling weight was supported by substantial evidence in the record.

### C. Goff's Credibility

Goff claims that the ALJ improperly concluded that his testimony was not credible. In *Polaski v. Heckler*, the Eighth Circuit listed several factors an ALJ must consider in evaluating a claimant's subjective complaints. 739 F.2d 1320, 1322 (8th Cir. 1984). While the ALJ must consider all of the *Polaski* factors, "the ALJ's decision need not include a discussion of how every *Polaski* factor relates to the claimant's credibility." *Casey*, 503 F.3d at 695. Ultimately, "[t]he ALJ may discount subjective complaints of pain if they are inconsistent with the evidence as a whole." *Id.* (citing *Polaski*, 739 F.2d at 1322). The ALJ is responsible for determining the credibility of the claimant, and where the ALJ provides good reasons for choosing to discredit the claimant's testimony, the Court will normally defer to the ALJ's decision. *Id.* at 696.

The inconsistencies between the evidence in the record and Goff's claim of disabling back pain are largely the same as those that led the ALJ to partially discount the opinion of Dr. Stelling. But the ALJ also cited two additional facts as further diminishing Goff's credibility. First, Goff was discharged from physical therapy for noncompliance and the record indicated that therapy helped his symptoms. [Tr. 15]. "A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility." *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005). Second, Goff told Dr. Ferraro

12

that he "really felt well" until 2008, [Tr. 299], which is inconsistent with his alleged onset date of January 1, 2005. [Tr. 16].

Combined with the inconsistencies discussed previously, the Court finds that substantial evidence supported the ALJ's finding that Goff's claim of disabling pain was inconsistent with the record as a whole. Consequently, the Court affirms the ALJ's decision regarding the credibility of Goff's subjective complaints of pain.

### D. The RFC Determination

Goff claims that the ALJ committed reversible error by failing to provide a specific bridge between the RFC and the medical evidence. The ALJ has the primary responsibility for determining the RFC based on all the evidence. *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). Nonetheless, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." C*asey*, 503 F.3d at 697. Consequently, the RFC "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184 (July 2, 1996).

Although the ALJ did not give Dr. Stelling's opinion controlling weight, he did give it some weight and, as a result, found that Goff had substantial physical limitations. The ALJ determined that Goff had the RFC to perform sedentary work, meaning that Goff was limited to lifting no more than ten pounds, walking and standing only occasionally, and performing only occasional postural maneuvers such as stooping,

13

kneeling, crouching, crawling, and climbing ramps and stairs. The ALJ also limited Goff to simple, routine, repetitive tasks due to pain.

Goff argues that the ALJ erred by not addressing two functional limitations contained in Dr. Stelling's opinion. Dr. Stelling concluded that Goff could work at most four hours in any given day, due to his limitations on sitting, standing, and walking, and that Goff could never crouch or crawl. Because the ALJ never explicitly addressed these limitations, either to accept or reject them, Goff claims that the ALJ failed to provide a specific bridge between the medical evidence and the RFC.

Goff overstates the ALJ's burden. The ALJ provided a detailed, narrative discussion of the relevant evidence that justified departing from Dr. Stelling's opinion. In particular, the ALJ made clear that the extreme limitations assessed by Dr. Stelling were discredited by the report of Dr. Harbach and the evidence of Goff's activities. As set out above, the ALJ thoroughly discussed how the evidence supported this decision, citing both medical and nonmedical evidence. Thus, the ALJ based the RFC on all the relevant evidence and the RFC was supported by some medical evidence. As such, the Court finds that the ALJ properly determined Goff's RFC, which is supported by substantial evidence in the record.

## III. Conclusion

For the foregoing reasons, the Commissioner's decision is AFFIRMED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

14

Case 3:11-cv-05114-NKL   Document 11   Filed 09/17/12   Page 14 of 15

Dated:  September 17, 2012
Jefferson City, Missouri